PEOPLE *v.* FARRAR

1. CRIMINAL LAW—PROSECUTOR'S REMARKS—INABILITY TO CURE BY
INSTRUCTION.

A new trial is required where the prejudice to the defendant
created by the prosecutor's improper argument could not have
been cured by instructions to the jury.

2. CRIMINAL LAW—PROSECUTOR'S REMARKS—INABILITY TO CURE BY
INSTRUCTIONS.

The prosecutor's statements, during a trial for assault committed
against a police officer, that "Every day [policemen] are called
pigs and people assault them with their fists and words" and
that "[policemen] don't bring these things into court unless
they really happened", were improper arguments whose prej-
udice could not be cured by instructions.

3. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—FAILURE TO
OBJECT.

The failure of defense counsel to object to improper argument
of the prosecutor does not preclude an appellate court from
considering that issue on appeal where that argument created
such prejudice that it could not have been cured by instruc-
tions.

4. CRIMINAL LAW—ARGUMENT TO JURY.

The prosecutor must refrain from argument which, by injecting
issues broader than the guilt or innocence of the accused,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  58 Am Jur 2d, New Trial § 57.
[3]  5 Am Jur 2d, Appeal and Error § 545.
[4–6]  42 Am Jur, Prosecuting Attorneys § 20.
   53 Am Jur, Trial § 459.
[7–11]  58 Am Jur, Witnesses § 734 *et seq.*
[12]  29 Am Jur 2d, Evidence §§ 320, 321, 326, 329.

would divert the jury from its duty to decide the case on the evidence.

5. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—PROSECUTOR'S REMARKS.

The prosecutor may not subtly subvert the presumption of innocence by appealing to the jurors to perform a civic duty to support the police, especially where policemen testified as prosecution witnesses.

6. CRIMINAL LAW—PROSECUTOR'S REMARKS—PERSONAL BELIEF.

The prosecutor may not express a personal belief in the guilt of the defendant.

7. CRIMINAL LAW—DEFENDENT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS.

The prosecutor's questioning of a criminal defendant on cross-examination as to whether he had been arrested and convicted of attempted murder was improper where the defendant had merely been charged with attempted murder but had pled guilty to the charge of aggravated assault.

8. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS.

A trial judge is not required to allow a prosecutor to impeach a criminal defendant by referring to the defendant's prior conviction record; the judge may, in the exercise of discretion, refuse to allow any questioning of a defendant concerning his previous criminal record (MCLA §§ 600.2158, 600.2159).

9. CRIMINAL LAW—DEFENDANT TESTIFYING—PRIOR CONVICTIONS—DISCRETION.

It is error for a trial judge to refrain from exercising his discretion as to the admissibility of a defendant's prior conviction record for impeachment purposes if defendant requests its exclusion.

10. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR CONVICTIONS—ADMISSIBILITY—DISCRETION.

Among the factors to be considered by the trial judge in exercising his discretion as to the admissibility of the criminal defendant's prior conviction record for impeachment purposes are: (a) the probative relevance of the prior conviction to the issue of credibility, and (b) the prejudicial effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions.

11. Criminal Law—Evidence—Other Crimes—Prejudice.

The prosecutor may not ordinarily introduce evidence of crimes other than the one the defendant is charged with committing, but when the other crime occurs shortly before or after the charged offense it may be provable unless the probative value of the proferred evidence is overcome by the danger that introduction of the evidence will confuse, mislead, or prejudice the jury.

12. Criminal Law—Evidence—Other Crimes—Felonious Assault —Prior Shooting Incident—Admissibility.

Evidence, introduced without undue emphasis or detail, of an incident in which the defendant allegedly shot his brother was properly introduced by the prosecutor in a trial in which the defendant was charged with the felonious assault of a police officer where the felonious assault occurred when the police responded to a call to investigate the brother's shooting, and the closeness in time between the two incidents make it almost impossible to conduct the felonious assault trial without reference to the earlier incident.

Appeal from Oakland, Philip Pratt, J. Submitted Division 2 June 8, 1971, at Detroit. (Docket No. 10532.) Decided October 1, 1971.

Robert C. Farrar was convicted of the felonious assault of a police officer. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Frank R. Knox,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Martin Reisig,* Assistant Defender, for defendant on appeal.

Before: Levin, P. J., and Quinn and V. J. Brennan, JJ.

Levin, P. J. The defendant, Robert C. Farrar, was convicted by a jury of felonious assault of a police officer.[1]

The questions presented on this appeal concern statements made by the prosecutor during the trial and in his closing argument and the prosecutor's reference to the defendant's criminal record in cross-examining him. We reverse and remand for a new trial.

The defendant shot his brother, Henry, in the leg at about three in the morning on March 22, 1970. The shooting was reported to the police by the landlord of the house in which Henry lived. Upon arriving at the scene, police officers observed the defendant with a gun in his hand.

At the trial, the officers testified that defendant pointed the gun at the chest of one of them for about five seconds before finally dropping it to the ground. The landlady testified that the defendant backed out of a door of the house, that he did not point the gun at the officers, and that he dropped it and raised his hands immediately upon being told to do so. The defendant related substantially the same version of the facts.

## I.

The prosecutor made the following statement during his closing argument:

"Every day they're [policemen] called pigs and people assault them with their fists and words. You know, they don't bring these things in. Those people are never charged with offenses. They don't bring these things into court unless they really happened. The point is the reason why they're here is this actually happened as the officers testified that it happened."

---

[1] MCLA § 750.82 (Stat Ann 1962 Rev § 28.277).

In *People* v. *Humphreys* (1970), 24 Mich App 411, 418, we reversed a defendant's conviction because we concluded that the prejudice created by the prosecutor's improper argument could not have been cured by instructions even if the defendant's lawyer had timely objected. The argument in that case was similar to the argument in the present case; there the prosecutor argued:

"I can assure you this: That if the defendant in the opinion of the police and in my opinion were innocent of this charge, we would not be here right now."

In *Humphreys,* we stressed that there was a close question of fact turning on the credibility of the witnesses. So too in this case the jury's decision on the disputed factual issue of whether the defendant pointed the gun at one of the officers before dropping it to the ground depended on its appraisal of the witnesses.

A new trial is required even though the defendant's trial lawyer failed to make proper objection.[2] The presumption of innocence protects the defendant in a criminal case with equal force whether the witnesses against him are police officers or ordinary citizens. The prosecutor may not subtly convert the presumption of innocence into a presumption of guilt by appealing to the jurors to perform a civic duty to support the police:

---

[2] Other cases ordering new trials because of improper prosecutorial argument even though the issue had not been properly preserved at the trial level include *People* v. *Ignofo* (1946), 315 Mich 626, 641; *People* v. *Slater* (1970), 21 Mich App 561; *People* v. *Montevecchio* (1971), 32 Mich App 163. Similarly, see the civil cases of *Sauve* v. *Carling Brewing Company, Inc.* (1965), 374 Mich 487 and *Morrison* v. *Skeels* (1969), 16 Mich App 727, 736. See, generally, *People* v. *Shirk* (1970), 383 Mich 180, 194; *People* v. *Degraffenreid* (1969), 19 Mich App 702, 715.

"The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."[3]

Both the Supreme Court of Michigan and our Court have repeatedly stressed that the prosecutor may not express a personal belief in the guilt of the defendant.[4] It is the prosecutor's duty, as well as the court's to see to it that the defendant receives a fair trial:

"The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."[5]

Unless we enforce the rules we encourage their violation and add to the burden of the appellate courts. Our frequent strictures against this kind of argument mean little unless we are prepared to reverse and require a new trial. A prosecutor who crosses a clearly defined line, and a trial judge who makes no effort to stop him,[6] have only themselves,

---

[3] ABA Project on Standards for Criminal Justice, The Prosecution Function, Std. 5.8(d); *cf. In re Widening of Woodward Avenue* (1941), 297 Mich 235, 246.

[4] See *People v. Quick* (1885), 58 Mich 321, 324; *People v. Dane* (1886), 59 Mich 550, 553; *People v. McGuire* (1891), 89 Mich 64; *People v. Boske* (1922), 221 Mich 129, 134, 135; *People v. Hill* (1932), 258 Mich 79, 88; *People v. Ignofo* (1946), 315 Mich 626, 636; *People v. Slater* (1970), 21 Mich App 561; *People v. Montevecchio* (1971), 32 Mich App 163. Similarly, see ABA Project Standards for Criminal Justice, The Prosecution Function, Std. 5.8(b).

[5] ABA Code of Professional Responsibility, EC 7–13. Similarly, see *Berger v. United States* (1935), 295 US 78, 88 (55 S Ct 629, 633; 79 L Ed 1314, 1321); ABA Project on Standards for Criminal Justice, The Prosecution Function, Std. 1.1(c); *Wellar v. People* (1874), 30 Mich 16, 23; *People v. Quick, supra* fn 4; *People v. Dane, supra* fn 4; *People v. Carr* (1887), 64 Mich 702, 708; *People v. Evans* (1888), 72 Mich 367, 383; *People v. Kirby* (1966), 4 Mich App 201, 204; *People v. Brocato* (1969), 17 Mich App 277, 304.

[6] See *People v. Aikin* (1887), 66 Mich 460, 480; *People v. Plautz* (1970), 28 Mich App 621, 623, stressing the court's duty to "check

not the appellate courts, to blame if a judgment of conviction is reversed and the case must be retried because of improper argument.

## II.

In cross-examining the defendant, the prosecutor asked him if he had been arrested and convicted of attempted murder. Subsequent questioning brought out that some years before the incident which gave rise to the instant prosecution, the defendant had been *charged* with attempted murder, and had pled guilty to the reduced charge of aggravated assault.

The questions were improper. A defendant's credibility may not be impeached by reference to a prior charge of which he was not convicted.[7] A prosecutor may not by innuendo inject evidence otherwise inadmissible.[8]

## III.

We address ourselves to additional assignments of error concerning questions likely to arise again upon the retrial.

The defendant contends that the judge erred when he failed to recognize that he may in the exercise of discretion refuse to allow any questioning of a defendant concerning his previous criminal record.

and control" unwarranted intemperance of zeal or language on the part of a prosecutor. In *People* v. *Brocato* (1969), 17 Mich App 277, 305, we said: "He [the judge] must not hesitate to keep the conduct of the attorneys within the boundaries of legitimate argument and to promptly check them when they exceed it". Similarly, see *People* v. *Carr* (1887), 64 Mich 702, 708; *People* v. *Camel* (1968), 11 Mich App 219, 222.

[7] *People* v. *Brocato* (1969), 17 Mich App 277, 301–303.

[8] *People* v. *DiPaolo* (1962), 366 Mich 394, 396, 397; *People* v. *Jones* (1940), 293 Mich 409, 413; *People* v. *Jones* (1971), 32 Mich App 309, 314; *People* v. *Ball* (1971), 33 Mich App 288, 290.

The relevant statutes provide:

"No person shall be disqualified as a witness in any civil or criminal case or proceeding by reason of his interest in the event of the same as a party or otherwise or by reason of his having been convicted of any crime; but such interest or conviction *may* be shown for the purpose of affecting his credibility. A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."   MCLA § 600.2159 (Stat Ann 1962 Rev § 27A.2159); originally enacted as PA 1881, No 245; words "civil or" added by PA 1915, No 314, C 17, § 64 (emphasis supplied).

"No person shall be excluded from giving evidence on any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, *may* be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided." MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158); originally enacted as PA 1861, No 125; see fn 21 and accompanying text (emphasis supplied).

In *Luck* v. *United States* (1965), 121 App DC 151, 156 (348 F2d 763, 768), the United States Court of Appeals for the District of Columbia Circuit, in a two-to-one decision, held, under a statute reading fundamentally as does Michigan's, that a trial judge may, in the exercise of discretion, exclude evidence of prior crimes. In so holding the Court emphasized that the statute:

"says, in effect that the conviction 'may', as opposed to 'shall', be admitted; and we think the choice of words in this instance is significant.  The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense.  The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case.  There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction.  There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility.  This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field."  (Emphasis by the Court.)

In subsequent decisions the District of Columbia Circuit fully adopted the *Luck* construction of the statute.[9]  In *Gordon* v. *United States* (1967), 127 App DC 343 (383 F2d 936), guidelines were suggested for the exercise of this trial judge discretion in an opinion written by Chief Justice (then Judge) Burger:  Among the factors to be considered are

[9] An extensive jurisprudence has been developed by the United States Court of Appeals for the District of Columbia Circuit regarding the *Luck-Gordon* rule.  In *Jones* v. *United States* (1968), 131 App DC 88 (402 F2d 639), and *Barber* v. *United States* (1968), 129 App DC 193 (392 F2d 517), the trial judge was found to have abused his discretion in admitting evidence of the defendant's prior conviction record.  No abuse of discretion was found in *Evans* v. *United States* (1968), 130 App DC 114 (397 F2d 675).  Compare *Brown* v. *United States* (1966), 125 App DC 220 (370 F2d 242); *Covington* v. *United States* (1966), 125 App DC 224 (370 F2d 246); *Hood* v. *United States* (1966), 125 App DC 16 (365 F2d 949); *Lewis* v. *United States* (1967), 127 App DC 115 (381 F2d 894); *Williams* v. *United States* (1968), 129 App DC 332 (394 F2d 957).

the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions.

In the few years since they were decided, *Luck* and *Gordon* have prompted a number of courts to take a new look at their statutes. The Supreme Courts of New Jersey[10] and Massachusetts[11] announced their adherence to the traditional view that the prosecutor has the right to have prior conviction evidence introduced. The Court of Criminal Appeals of Texas[12] stated that its rule "lies between the practice common in such states as New Jersey and the *Luck* doctrine". The Supreme Court of Minnesota noted the "recent trend" of leaving the question to the trial court to decide but ruled that it was for the legislature to make any change; the dissenter declared that when a majority of the court agrees that a statutory rule is manifestly prejudicial to the rights of an accused it should be set aside because the legislature is not empowered to enact rules of evidence which deprive a defendant of a fair trial.[13]

The United States Courts of Appeals have, on the whole, adopted the leadership of the District of Columbia Circuit and recognized that the question rests in trial judge discretion.[14] The Supreme

---

10 *State* v. *Hawthorne* (1967), 49 NJ 130 (228 A2d 682).

11 *Commonwealth* v. *West* (1970), — Mass — (258 NE2d 22).

12 *Bustillos* v. *State* (Tex Crim App, 1971), 464 SW2d 118, 124.

13 *State* v. *West* (1969), 285 Minn 188 (173 NW2d 468). The Michigan Supreme Court has asserted its paramount power over practice and procedure, including statutory rules of evidence. See *Perin* v. *Peuler* (On Rehearing, 1964), 373 Mich 531, 540–542.

14 See *United States* v. *Johnson* (CA1, 1969), 412 F2d 753, 756; *United States* v. *Palumbo* (CA2, 1968), 401 F2d 270, 273; *United States* v. *Greenberg* (CA3, 1969), 419 F2d 808, 809; *United States* v. *Hildreth* (CA4, 1967), 387 F2d 328, 329; *United States* v. *Vigo*

Courts of Connecticut,[15] Alaska,[16] Kentucky,[17] and Illinois[18] have also adopted that view.[19]   Mr. Justice Schaefer, speaking for a unanimous Illinois Supreme Court, recently declared:

"The question is inherently judicial, and we believe that view is correct which places the discretion as to the admissibility of this kind of evidence in the judge rather than in the prosecutor." *People v. Montgomery* (1971), 47 Ill 2d 510, 513 (268 NE 2d 695, 698).

Commentators generally are critical of the rule allowing evidence of prior conviction record to be admitted to impeach a defendant when he takes the stand as a witness.[20]

---

(CA5, 1970), 435 F2d 1347; *United States* v. *Allison* (CA9, 1969), 414 F2d 407, 411; *United States* v. *Bartello* (CA10, 1970), 432 F2d 1030, 1033.   *Contra: United States* v. *Escobedo* (CA7, 1970), 430 F2d 14, 18–20; *United States* v. *Scarpellino* (CA8, 1970), 431 F2d 475, 478–479.   Both of the *contra* decisions were by divided courts. The dissenter in the Seventh Circuit relied on an earlier decision of his Court which followed the *Luck-Gordon* rule; the majority's decision is weakened by its heavy reliance on the preliminary draft of Proposed Rules of Evidence for the United States District Courts which, as later revised and now proposed (Revision of March, 1971), adopts the *Luck-Gordon* rule; see 51 FRD 315, 391, and *People* v. *Montgomery* (1971), 47 Ill 2d 510 (268 NE2d 695), for the text of the revised draft.

[15] *State* v. *Marquez* (1970), 160 Conn 47 (273 A2d 689).

[16] *Spaulding* v. *State* (Alaska, 1971), 481 P2d 389.   This unanimous opinion apparently supersedes *Parish* v. *State* (Alaska, 1970), 477 P2d 1005, where a majority comprised of three Justices expressed a disinclination to modify prior practice over the dissent of one justice and the concurrence without opinion of another.

[17] *Bogie* v. *Commonwealth* (Ky, 1971), 467 SW2d 767.

[18] *People* v. *Montgomery* (1971), 47 Ill 2d 510 (268 NE 2d 695).

[19] The Supreme Judicial Court of Maine has indicated that it is ready to adopt this view when the question is squarely presented. See *State* v. *Toppi* (Maine, 1971), 275 A2d 805, 810.   See also *State* v. *Ross* (1971), — Ariz — (485 P2d 810, 811).

[20] Professor McCormick in his work on Evidence, § 43, points out that the present rule is an historical accident.   See also, Note, Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale LJ 763, 774–778 (1961); Note, Constitutional Problems Inherent in the Admissibility of Prior Record Conviction Evidence for the

In the first statement by our Supreme Court after the common-law disability of a defendant in a criminal case to testify in his own behalf was legislatively removed, the Court declared it "was quite within the *discretionary* authority of the trial judge" (emphasis supplied) to permit a defendant who had elected to testify to be cross-examined as to his prior conviction record. *People* v. *Cummins* (1882), 47 Mich 334, 336.[21]

---

Purpose of Impeaching the Credibility of the Defendant Witness, 37 Cinci L Rev 168 (1968).

Both the Uniform Rules of Evidence Act (Rule 21; 9A ULA, 607) and the Model Code of Evidence (Rule 106), would eliminate the use of such evidence against a defendant in a criminal case unless he first introduces evidence admissible solely for the purpose of supporting his credibility and then would limit such evidence to convictions of a crime involving "dishonesty or false statement".

It has been suggested that the present rule unconstitutionally chills a defendant's right to take the stand in his own defense and that it "effects an anomalous distinction between defendants with and those without a criminal record in the exercise of the right to testify in their own behalf". See Note, 70 Yale LJ 763, 776 (1961); Note, 37 Cinci L Rev 168 (1968).

A defendant in a criminal case has a constitutional right to take the stand in his own behalf. *Cf. In re Oliver* (1948), 33 US 257, 273 (68 S Ct 499, 507; 92 L Ed 682, 694); *MacKenna* v. *Ellis* (CA5, 1960), 280 F2d 592, 595; *Ferguson* v. *Georgia* (1961), 365 US 570 (81 S Ct 756, 5 L Ed 2d 783). Cases holding unconstitutional rules that needlessly penalize assertion of constitutional rights include *United States* v. *Jackson* (1968), 390 US 570, 583 (88 S Ct 1209, 1217; 20 L Ed 2d 138, 147); *Simmons* v. *United States* (1968), 390 US 377, 394 (88 S Ct 967, 976; 19 L Ed 2d 1247, 1259); *Groshart* v. *United States* (CA9, 1968), 392 F2d 172, 180; *People* v. *Luna* (1967), 37 Ill 2d 299, 308 (226 NE 2d 586, 590); *Griffin* v. *California* (1965), 380 US 609, 614 (85 S Ct 1229, 1232, 1233; 14 L Ed 2d 106, 109, 110).

21 The common-law disabilities were removed for defendants in criminal cases by PA 1881, No 245; as to the former state of the law see *People* v. *Thomas* (1861), 9 Mich 314 commenting on PA 1861, No 125. See opening paragraphs of part III for texts of the 1861 and 1881 acts.

There are, of course, numerous statements in our later cases concerning the prosecutor's "right" to introduce prior conviction evidence. Those statements were not made in the context of a challenge based on *Luck* and its reading of the statute; *cf. Bissell* v. *Starr* (1875), 32 Mich 297, 299; *People* v. *Wimberly* (1970), 384 Mich 62, 69. The rule is well settled that a point "assumed without consideration is of course not decided". *Allen* v. *Duffie* (1880), 43 Mich 1, 11.

In *People* v. *Eldridge* (1969), 17 Mich App 306, our Court, citing *Luck,* reversed a defendant's conviction of statutory rape for, among other reasons, the prosecutor's questioning of an alleged *res gestae* witness regarding his conviction of taking indecent liberties with the girl who complained against the defendant Eldridge.

We are convinced that the *Luck* construction of the statute is the correct one.  Accordingly, on remand the trial judge shall exercise his discretion if again requested to exclude any reference to the defendant's prior conviction record.

## IV.

The defendant also assigns as error the prosecutor's reference to the shooting of the defendant's brother inside the house shortly before the police officers were called.

While the prosecutor may not ordinarily introduce evidence of crimes other than the one the defendant is charged with committing, when the other crime occurs shortly before or after the charged offense it may be provable unless the probative value of the proffered evidence is overcome by the danger that introduction of the evidence will confuse, mislead or prejudice the jury.[22]

---

*Taylor* v. *Walter* (1970), 384 Mich 114, (on rehearing, 1971), 385 Mich 599, and *Sting* v. *Davis* (1971), 384 Mich 608, concern the construction of GCR 1963, 607.  This rule, first promulgated in 1965 because of the court's concern regarding proof in negligent entrustment actions, by its terms applies only to the trial of civil actions and overrules a rule of evidence established in the motor vehicle code.  Rule 607 does not apply to the special problem of defendants in criminal cases dealt with in PA 1881, No 245.; see comments of Mr. Justice Brennan (384 Mich at p 615).  See *People* v. *Simard* (1946), 314 Mich 624, 630, 631.

[22] See *People* v. *Lincourt* (1923), 221 Mich 674; *People* v. *Savage* (1923), 225 Mich 84; *People* v. *Andriacci* (1968), 11 Mich App 482, 486; *People* v. *Nichols* (1971), 33 Mich App 63.

A review of the record indicates that the closeness in time between the two incidents made it almost impossible to conduct the trial without some reference to the earlier incident. The people were entitled to show, generally, without undue emphasis or detail, how the defendant came to be armed and why the police were called to the scene, that there had been an altercation between the defendant and a member of his family, and that the defendant had obtained a gun and the police were called. We can see no prejudice to the defendant in the introduction of such testimony as it must be apparent to the jury from the fact that several squad cars were called to the scene that something untoward had occurred.

For the errors mentioned, we reverse and remand for a new trial.

All concurred.