PEOPLE v MOORE

Docket No. 110180. Submitted October 4, 1990, at Lansing. Decided
   March 8, 1991; approved for publication May 7, 1991, at 11:00
   A.M.

   Laurie M. Moore, originally charged with second-degree murder,
      was convicted by a jury in the Otsego Circuit Court of volun-
      tary manslaughter. During the trial, circumstantial evidence
      was introduced which supported the prosecution's theory of the
      case that the defendant killed the decedent during an uncom-
      pleted drug sale. The trial court, William R. Brown, J., over a
      defense objection and at the prosecution's request, instructed
      the jury regarding the lesser offense of voluntary manslaugh-
      ter. The defendant appealed.

   The Court of Appeals *held:*

   Murder is reduced to voluntary manslaughter where the
      element of malice is negated by provocation and the homicide
      is committed in the heat of passion. While provocation is not
      an element of voluntary manslaughter, and thus need not be
      proven by the prosecution beyond a reasonable doubt, a jury
      should be instructed regarding voluntary manslaughter only
      where there is at least a modicum of evidence of provocation.
      Because there was no evidence from which the jury reasonably
      could find that the killing was the result of provocation, it was
      error to instruct the jury regarding voluntary manslaughter.

   Reversed.

   WAHLS, P.J., concurring, also stated that the prosecutor
      engaged in misconduct during the trial which deprived the
      defendant of a fair trial.

HOMICIDE — VOLUNTARY MANSLAUGHTER — PROVOCATION — JURY
      INSTRUCTIONS.
      It is error mandating reversal in a trial for second-degree murder

REFERENCES
Am Jur 2d, Homicide §§ 45, 53, 56, 57, 533.
Lesser-related state offense instructions: modern status. 50 ALR4th
   1081
Propriety of manslaughter conviction in prosecution for murder,
   absent proof of necessary elements of manslaughter. 19 ALR4th
   861.

to instruct a jury over a defense objection regarding voluntary manslaughter where there is no evidence of provocation.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Norman R. Hayes,* Prosecuting Attorney, and *Dawn Pyrek,* Chief Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *F. Martin Tieber*), for the defendant on appeal.

Before: Wahls, P.J., and Doctoroff and G. S. Allen,* JJ.

Per Curiam. Tried by an Otsego Circuit Court jury on a charge of second-degree murder, MCL 750.317; MSA 28.549, defendant was found guilty of voluntary manslaughter, MCL 750.321; MSA 28.553, on November 7, 1987. Defendant was sentenced on May 3, 1988, to seven to fifteen years' imprisonment. He appeals as of right. We reverse his conviction.

The charge against defendant arose out of the death of Jerry Tobias, an oil well worker employed by Acme Tool, whose frozen body was found around 4:00 P.M. on December 8, 1986, in the bed of his pickup truck, which was parked near the City of Gaylord Fire Hall. When found, jumper cables entwined his hands, and his shirt was pulled up around his head, torn and stained with blood. Scrape marks, running lengthways, scarred his cowboy boots. There were areas of recent bleeding over the right temple, behind the right ear, over the crown of the head, over the left midparietal area, and over the left ear below that.

Patricia Newhouse, the state's pathologist, testified at trial that the marks on Tobias' boots were

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

consistent with the body having been dragged in an unconscious state. She also testified that she discovered nine to eleven areas of trauma to the head and a total of sixteen to twenty areas of trauma during an autopsy. Some of these wounds were consistent with defense wounds. Newhouse opined that the cause of death was a blunt (nonpenetrating) trauma to the head with hemorrhage in the midbrain and pons.

The case against defendant was totally circumstantial, built primarily upon evidence that (1) linked Tobias to Walt's Butcher Shop, a business owned by defendant, his mother, and his wife, a prominent Gaylord attorney, (2) suggested that Tobias was to meet defendant at midnight on Friday, December 5, 1986, for a cocaine buy, and (3) established that decedent used cocaine.

Don and Becky Nelson testified that Tobias had come to their house at approximately 8:00 P.M. on December 5, 1986, and that they gave him $200 to purchase cocaine. At that time, Tobias stated that he was to meet with defendant at Walt's around midnight and that he would be in contact with them later that night or on Saturday. The following day, December 6, Becky Nelson saw defendant at Walt's and inquired regarding whether defendant had seen Tobias. Defendant responded that he had met Tobias around midnight but that nothing had come through.

Newhouse testified that she discovered multiple puncture wounds present at the bend in Tobias' arms opposite the elbows which appeared fresh. Tobias' wife testified that she knew of one incident in May 1986 when her husband had mainlined cocaine. Urine taken from Tobias showed the presence of cocaine and cocaine metabolites. His blood was not tested for the presence of cocaine.

A search of Tobias' truck led to the discovery of

a package of meat, admittedly from Walt's, behind the front seat of the truck. On December 12, 1986, police searched Walt's and seized a chicken rotisserie skewer. No blood or other physical evidence was found on the skewer. On December 17, 1986, Tobias' body was exhumed and the various wounds were compared to the skewer. Newhouse testified that several of the wounds were consistent with an injury which could have been caused by the skewer, inasmuch as the tips of the skewer were 0.6 centimeter and the round wounds on Tobias' forehead and the longitudinal wounds on the arms measured 0.6 centimeter and the distance between the two large tips of the skewer was 7.5 centimeters, which was the same distance apart as two wounds on the head and the two 0.6-centimeter wounds on the shoulder.

On this evidence, the prosecution theorized that Tobias had been killed by defendant during a drug deal that had gone bad.

Defendant presented Laurence Simson, a board-certified forensic pathologist, who testified that the skewer was not the weapon that killed Tobias. He also testified that he did not believe that Tobias died of head injuries because he would expect to see skull fractures, skin lacerations, and swelling where a blow to the head was struck with sufficient force to cause brain injury. He testified that the hemorrhaging could have been caused by the freezing and thawing of the body. Simson further testified that he did not know the cause of death, but noted that cocaine could have played a significant role in Tobias' death. He was critical of the prosecution's failure to make every effort to find out more about Tobias' drug use.

Following the close of proofs, the prosecution asked the court to instruct the jury regarding second-degree murder and voluntary manslaugh-

ter. Defendant objected to the giving of an instruction on voluntary manslaughter. The court gave it over defendant's objection. The jury returned a verdict of guilty of voluntary manslaughter the following day, after being unexpectedly sequestered overnight.

On appeal, defendant raises thirteen issues. Because reversal is mandated by error on defendant's first issue, we find it unnecessary to address defendant's remaining issues.

Defendant argues that the trial court erroneously instructed the jury, over his objection, on the offense of voluntary manslaughter. We agree.

At a criminal trial, the judge functions both as a neutral arbiter between the two contesting parties and as the jury's guide to the law. This role requires that the judge instruct the jury regarding the law applicable to the case, MCL 768.29; MSA 28.1052, and fully and fairly present the case to the jury in an understandable manner. *People v Jones,* 419 Mich 577, 579; 358 NW2d 837 (1984). The fulfillment of this obligation requires that the judge instruct on included offenses where there is a request to do so and where there is evidence in the record which would support a conviction of the lesser offense. *People v Richardson,* 409 Mich 126, 135; 293 NW2d 332 (1980); *People v Ora Jones,* 395 Mich 379, 386; 236 NW2d 461 (1975). When no evidence exists to support a conviction of a lesser-included offense, an instruction with regard to a lesser-included offense detracts from, rather than enhances, the rationality and reliability of the fact-finding process. *People v Beach,* 429 Mich 450, 481; 418 NW2d 861 (1988). Voluntary manslaughter is a cognate lesser included offense of murder. *People v Pouncey,* 183 Mich App 216, 218; 454 NW2d 130 (1989).

Our Supreme Court has described manslaughter

as a homicide "devoid of actions which require
unimpassioned calculation for their accomplish-
ment." *People v Younger,* 380 Mich 678, 681; 158
NW2d 493 (1968). It is the product of provocation
which unseated reason and permitted passion free
reign. *Id.,* 681-682.

> It requires that a defendant be found to have
> had an intent to kill or an intent to do serious
> bodily harm to the deceased. To this extent the
> offense parallels the crime of murder; but, as noted
> above, it is distinguished from murder by an ab-
> sence of malice. To reduce a homicide to voluntary
> manslaughter the fact finder must determine from
> an examination of all the circumstances surround-
> ing the killing that malice was negated by provo-
> cation and the homicide committed in the heat of
> passion. *People v Scott,* 6 Mich 287, 295 (1859).
> [*People v Townes,* 391 Mich 578, 589; 218 NW2d
> 136 (1974).]

Once the sufficiency of the evidence standard as
set forth in *People v Hampton,* 407 Mich 354, 368;
285 NW2d 284 (1979), cert den sub nom *Michigan
v Hampton,* 449 US 885 (1980), has been satisfied
regarding the murder charge, the jury may con-
sider the lesser charge if there is "only a modicum
of evidence of provocation." *People v King,* 98
Mich App 146, 152; 296 NW2d 211 (1980). The
standard has been defined as "slight but sufficient"
evidence. *Id.* Because provocation is not an ele-
ment of voluntary manslaughter, it need not be
proven by the prosecution beyond a reasonable
doubt. *Id.,* 150-151. Therefore, though there need
not be proof beyond a reasonable doubt of provoca-
tion, there must be some "slight but sufficient"
evidence in order for the instruction on voluntary
manslaughter to be given.

Our review of the record fails to disclose evi-

dence surrounding the killing itself from which
defendant's state of mind can be ascertained. It
also fails to disclose evidence of any provoking
event from which the jury could determine that
the event was of the magnitude necessary to pro-
voke an ordinary person or to disclose evidence
relative to a time span between any provoking
events and the killing from which the jury could
determine that the killing occurred within a rea-
sonable time of the provocation. In *Beach,* 429
Mich 480, our Supreme Court specifically stated:

> There must be *some evidence on the record* to
> support the elements of the requested lesser in-
> cluded (cognate) offense. [Emphasis added.]

Because we find no evidence on the record to
support the giving of the voluntary manslaughter
instruction, we hold that the giving of the instruc-
tion amounts to error warranting reversal. Accord-
ingly, defendant's conviction of manslaughter is
reversed.

Reversed.

WAHLS, P.J. *(concurring).* I concur in the major-
ity opinion. However, I find it necessary to address
certain errors which occurred at trial that were
attributable to the prosecuting attorney. In my
opinion, the prosecutor's repeated display of per-
sonal animosity towards defendant resulted in
severe and reprehensible prosecutorial misconduct
and denied defendant a fair trial.

During closing arguments the prosecutor mis-
characterized and disparaged defendant's presump-
tion of innocence by stating that defendant was
"clothed in a shroud of—of innocence, throughout
the course of this trial" and insinuated that defen-
dant was hiding from the jury because defendant

was not seated at the defense table. Defense counsel's objection on the ground of prosecutorial misconduct was sustained, and the trial court instructed the prosecutor to refrain from making such remarks.

During opening, closing, and rebuttal arguments, the prosecutor denigrated defense counsel by attempting to portray defense counsel as a sharp conniving attorney who was intentionally trying to mislead the jury. It is improper for the prosecutor to engage in arguments which attack defense counsel. Such arguments undermine the defendant's presumption of innocence and impermissibly shift the jury's focus from the evidence itself to defense counsel's personality. *People v Dalessandro,* 165 Mich App 569, 580; 419 NW2d 609 (1988); *People v Wise,* 134 Mich App 82, 101-102; 351 NW2d 255 (1984).

A review of the prosecutor's entire closing argument leaves one with the impression that the prosecutor was attempting to shift the burden of proof. The prosecutor suggested that defendant had to prove his contentions or come up with a reasonable explanation for the evidence against him. Such argument is wholly improper.

In sum, the prosecutor's demeanor at trial "blatantly transgressed the rules of conduct imposed on him as a public officer." *People v Bracato,* 17 Mich App 277, 304; 169 NW2d 483 (1969). The statement that defendant was hiding from the jury was, in and of itself, gross error, went beyond the bounds of propriety, and constituted a level of prejudicial impact which could not have been overcome by the sustained objection.

A careful review of the entire record, including a separate record made outside the presence of the jury, offers an explanation for the prosecutor's misconduct throughout the course of defendant's

trial. Apparently, the seeds of the prosecutor's enmity toward defendant were sown when the prosecutor and defendant knew each other as children. The prosecutor's rancor toward defendant further increased when defendant dated and later married the prosecutor's former girl friend, a prominent Gaylord attorney. It is very clear from the record that the prosecutor's deportment in this case was not the result of overzealous advocacy, but rather fervent vindictiveness.

"[P]rosecutors are sworn ministers of justice, and not advocates employed to procure convictions without regard to legal guilt or innocence." *People v Carr,* 64 Mich 702, 708; 31 NW 590 (1887). In the instant case, the calculated manner in which the prosecutor introduced error in the presence of the jury was a violation of his public trust. Our Supreme Court and this Court have on many occasions been called upon to express an opinion concerning the duty of the prosecutor to ensure that the accused has a fair and impartial trial. See *People v Evans,* 72 Mich 367, 383; 40 NW 473 (1888); *People v Erb,* 48 Mich App 622, 631-632; 211 NW2d 51 (1973); *People v Farrar,* 36 Mich App 294, 299-300; 193 NW2d 363 (1971). One would think that, at this point in time, it would be unnecessary for this Court to further reiterate the prosecutor's role as a public official. However, in light of the prosecutor's conduct in the instant case, I find occasion to cite *Berger v United States,* 295 US 78, 88-89; 55 S Ct 629; 79 L Ed 1314 (1935), regarding the duty of a prosecuting attorney:

He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful convic-

tion as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. . . .

In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its non-existence.

See also *People v Kirby,* 4 Mich App 201, 204; 144 NW2d 651 (1966); *Bracato, supra,* p 304.

A prosecutor may not disregard with impunity his duty as an administrator of justice. Vindictive conduct by persons vested with the awesome power of prosecuting attorneys is unacceptable and cannot be tolerated. Here, defendant was entitled to that which he did not have, a fair trial.