# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KAY MARGARET OBERLE,

      Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 332956
Luce Circuit Court
LC No. 15-001257-FH

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of conspiracy to operate or maintain a methamphetamine laboratory, MCL 333.7401c(2)(f), MCL 750.157a; operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f); owning a building intended to be used as a location to manufacture methamphetamine, MCL 333.7401c(1)(a); possession of methamphetamines, MCL 333.7403(2)(b)(*i*); and delivery or possession of methamphetamines near a park, MCL 333.7410a. The circuit court sentenced defendant as a second habitual offender, MCL 333.7413, to serve 66 to 240 months for the conspiracy conviction, the operating or maintaining a methamphetamine lab conviction, the owning a building used to operate or maintain a methamphetamine lab conviction, and the possession of methamphetamine conviction, and to 12 months for the delivery or possession of methamphetamine near a park conviction. We affirm.

## I. PROSECUTORIAL MISCONDUCT

Defendant argues that she was denied a fair trial based on inadmissible, inflammatory arguments made by the prosecutor during his opening statement. The prosecutor described methamphetamine (meth) as a "terrible drug" that was "highly addictive," "extremely poisonous," "very dangerous" to ingest and to make, and "very cheap" to make. According to defendant, this was improper because the irrelevant statements were designed to appeal to the jury's sense of "civic duty," and to their fears and prejudices about meth. They were, according to defendant, designed to divert the jury from its duty to decide the case based on the evidence by injecting issues broader than the guilt or innocence of the accused. See *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). Given the evidence subsequently adduced at trial, the prosecutor's statements were permissible commentary. See *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014) ("During opening statements, a prosecutor may state the facts that

-1-

will be proved at trial. A prosecutor may not offer his or her personal belief about the defendant's guilt, but may summarize what he or she thinks the evidence will show.") (citations and quotation marks omitted); *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (holding that prosecutors are free to argue the facts in evidence and the reasonable inferences arising from those facts).

Our Supreme Court has stated that "prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Bahoda,* 448 Mich at 282-283. "Generally, [however,] [p]rosecutors are accorded great latitude regarding their arguments and conduct" and are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id.* at 282 (citations and quotation marks omitted; second and third alterations in original). Similarly, prosecutors may summarize anticipated evidence. *Lane,* 308 Mich App at 63. The prosecutor's statements foreshadowed the evidence presented, and thus were not improper.

There was ample evidence presented at trial to support the comments about meth made during the prosecutor's opening statement. A Michigan State Police trooper testified about the "ingredients" required to make meth, and the dangers inherent in that process. Other officers experienced in narcotics law enforcement described meth as "very" or "highly" addictive, while both Joseph and Pamela Pethers testified that they were addicted to meth. This testimony established not only that the process of manufacturing meth was dangerous, but that the ingredients used to make it were quite toxic, and that the finished product was highly addictive. The prosecutor's comments that meth was "highly addictive," dangerous, and "terrible" presaged the trial testimony, and was not improper. There was no plain error requiring reversal. *Bahoda,* 448 Mich at 282; *Lane,* 308 Mich App at 62-63.

## II. INEFFECTIVE ASSISTANCE AND PROSECUTORIAL MISCONDUCT

Defendant argues that defense counsel provided ineffective assistance by introducing evidence that defendant was previously in jail, and by failing to object to the prosecutor's questions on the topic of defendant's previous arrest and consumption of alcohol. Although defendant's argument that the prosecutor improperly questioned a witness about her previous arrest has merit, defendant was not denied a fair trial on this basis, and is not entitled to reversal.

### A. JAIL

Defendant argues first that defense counsel was ineffective for introducing evidence during her boyfriend's direct examination that defendant was previously in jail. Specifically, in response to defense counsel's question, "How do you know [defendant]?", the witness responded that he had first called defendant after a friend had told him "that she . . . was in jail, . . . and she needed somebody to talk to." Defendant argues that this testimony demonstrates that defense counsel did not adequately investigate the witness and should have known how his relationship with defendant began.

The accused has the right under the federal and state Constitutions to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466

US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant bears a heavy burden to show that counsel made errors so serious that she was not performing as the counsel guaranteed by the Sixth Amendment, and the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). To prevail on an ineffective assistance of counsel claim, a defendant must meet two criteria: first, she must "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 US at 687. Second, the defendant must show the deficient performance was prejudicial. *Id*. Prejudice is established where there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at 694; *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

Although defendant argues that trial counsel should have known that the witness first met defendant when she was in jail, we note that the witness testified on cross-examination that he met defendant "when she got out of jail," which indicates that defendant was not incarcerated when they met. Thus, although defense counsel may have known that the witness and defendant first met close in time to when defendant was in jail, she could not have necessarily anticipated that the boyfriend would respond to her question, "How do you know her?" by referencing defendant's time in jail, rather than by simply stating that they were in a dating relationship.

We also note that the purpose in calling the witness was to show that the boyfriend saw defendant on a regular basis, and that defendant had not appeared to have used meth on any of the days they were together. Defense counsel also established through the witness that defendant had purchased Sudafed for him as treatment for his allergies, suggesting the purchase was not for use as an ingredient in meth. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy," *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy," *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defense counsel was not ineffective on the basis of this testimony.

Similarly, we are not persuaded that the prosecutor acted improperly by mentioning defendant's time in jail during cross-examination of the witness. Issues of "prosecutorial misconduct are considered on a case-by-case basis . . . in context" to determine whether the "defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Here, the prosecutor merely repeated the witness's testimony from the direct examination when he asked him to clarify that he had met defendant "after she got out of jail." The prosecutor did not ask why defendant had been in jail or comment further on this topic. Based on this very limited exchange, no error resulting in a miscarriage of justice occurred. See *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

## B. PRIOR ARREST

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's questions concerning her previous arrest during cross-examination of defendant's boyfriend. We recognize that defense counsel may have intentionally chosen not to object so as

not to call attention to an issue that may have negatively affected the jury's view of defendant. However, even if she should have objected or requested a curative instruction, defendant has not shown that the error affected the outcome of her case. *LaVearn*, 448 Mich at 216. Other evidence properly introduced at trial, including the incriminating testimony of the Pethers and defendant's daughter, provided sufficient evidence to show that defendant had possession of meth and that she allowed it to be manufactured in her home. The unchallenged testimony about defendant's previous arrest did not likely affect the outcome of the case. *Id.*

Nor has defendant shown that the prosecutor committed error requiring reversal by introducing evidence of her prior arrest. The prosecutor initially confirmed the boyfriend's prior testimony that he had "met [defendant] after she got out of jail." The prosecutor then asked him if he was with defendant "when she was arrested," presumably referring to her arrest for the current offense, and the witness responded "not this time." The prosecutor later asked whether "there [had] been a time in the past when [defendant] was arrested in your residence." Although this Court has held that prosecutors have a special obligation to avoid areas of testimony that may unfairly prejudice a defendant, *People v McCarver (On Remand)*, 87 Mich App 12, 15; 273 NW2d 570 (1978), an isolated or inadvertent reference to a defendant's prior criminal activities will not warrant reversal, *People v Wallen*, 47 Mich App 612, 613; 209 NW2d 608 (1973). However, we agree that the prosecutor should not have asked whether "there [had] been a time *in the past* when [defendant] was arrested in your residence" because it potentially referenced prior bad acts. See MRE 404(b). However, there is no indication that the error affected defendant's substantial rights. Sufficient evidence was presented at trial to establish that defendant had possession of meth and allowed the Pethers to make it in her home. Defendant has not shown that the prosecutor's improper question affected the integrity of the proceedings or that she was actually innocent and the prosecutor's error caused her to be convicted. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

We likewise reject defendant's argument that the court committed error requiring reversal by allowing the witness to be cross-examined "about arrests not resulting in conviction or about the length and detail of any sentence as a result of earlier convictions," citing *People v Rappuhn*, 390 Mich 266; 212 NW2d 205 (1973). Defendant's reliance on *Rappuhn* is misplaced. In *Rappuhn*, our Supreme Court stated that " 'in the examination or cross-examination of *any witness,* no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial.' " *Id.* at 270, quoting *People v Falkner*, 389 Mich 682, 695; 209 NW2d 193 (1973) (emphasis in original) The *Rappuhn* Court held that the defendant had been prejudiced by the reference to his arrest record, stating that "*Falkner* clearly speaks to the impeachment of any witness by use of an arrest record. Therefore, defendant is entitled to a new trial on the basis of *Falkner*." *Rappuhn*, 390 Mich at 270-271. *Rappuhn* is not applicable to the instant case because the record does not indicate that the prosecutor elicited testimony about defendant's previous arrest to impeach her credibility or that of the witness. Further, *Rappuhn* prohibits counsel from making any "inquiry . . . regarding prior arrests or charges against such witness which did not result in conviction[.]" *Id.* at 270 (citation and quotation marks omitted). Defendant does not claim that her prior arrest did not lead to charges resulting in conviction and thus, it is not clear that the comment would have been prohibited under *Rappuhn*. But even if it did not result in conviction, again, the error did not

affect the integrity of the proceedings or affect the fairness of the trial, and does not require reversal. *Thomas,* 260 Mich App at 454.

## C. "DRINKING"

Next, defendant argues that defense counsel should have objected during the prosecutor's cross-examination of her boyfriend when he was asked whether defendant was drinking at the time of her arrest. Defendant does not explain why counsel should have objected to these questions. However, we presume she believes that this line of questioning was potentially prejudicial or portrayed her in a bad light. Such an argument is not persuasive evidence that defense counsel was ineffective because defendant has not shown that the outcome of her case would have been different if counsel had objected. Defendant has not asserted that it would have been illegal for her to consume alcohol. In addition, no evidence that defendant drank alcohol was actually admitted as a result of the witness's testimony because he categorically denied that defendant was drinking at any time in his presence or that they ever drank together. We do not agree that defense counsel was ineffective for failing to object to the prosecutor's questions, but to the extent that there was any error, defendant has not shown that it affected the outcome of her case. *LaVearn,* 448 Mich at 216.

We agree with defendant, however, that the prosecutor improperly questioned the witness regarding whether she was drinking at the time of her arrest. Defendant was not charged with any alcohol-related offenses, and no evidence was offered to show that, for instance, she was under the influence of alcohol during the commission of the offenses or that consumption of alcohol otherwise figured in the commission of the offenses. Thus, the prosecutor delved into an irrelevant area. See MRE 401 and 402. However, as discussed, defendant has not argued that it would have been improper or illegal for her to consume alcohol for any reason, and the prosecutor did not suggest that defendant would have been breaking the law by drinking. Additionally, as noted, the witness testified that he did not see defendant drinking at any time. Because defendant cannot show that she was denied a fair trial based on the prosecutor's questions, she is not entitled to a new trial on this basis.

## III. OV 14

Defendant argues that the trial court improperly assessed 10 points for offense variable (OV) 14, MCL 777.44, because the evidence did not support a finding that she was a leader in the commission of the offenses. Ten points may be assessed for OV 14 where "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). "The entire criminal transaction should be considered when scoring this variable," and where "3 or more offenders were involved, more than 1 offender may be determined to have been a leader." MCL 777.44(2)(a) and (b). The trial court assessed 10 points for OV 14, over defendant's objection, based on its finding that defendant "was certainly a willing participa[nt]" who provided money to the Pethers to purchase Sudafed and other materials, allowed her house to be used to manufacture meth, and who "solicited her daughter to purchase Sudafed." The court acknowledged that others may have played an even greater role in carrying out the offense, but determined that it was still appropriate to assess 10 points based on defendant's role. We agree.

The statute does not define the term "leader," so we may determine the common meaning of the term from the dictionary. *Ter Beek v City of Wyoming*, 495 Mich 1, 20; 846 NW2d 531 (2014). One common definition of a "leader" is "[o]ne that leads or guides." *The American Heritage Dictionary of the English Language* (2000). Under the statute, more than one offender may be found to be a leader when the offense involves three or more offenders. Thus, as the court noted, while Joseph Pethers may have played the greatest role in manufacturing the meth, it was still appropriate to assess 10 points for defendant's role in the offense because the evidence supported a finding that she allowed her home to be used as a meth lab, she paid for the materials for one of the meth "cooks," and she solicited her daughter to obtain a necessary ingredient, actions that could be construed as "leading" or "guiding" the creation of a meth lab. We are not persuaded by defendant's argument that the court's score was not appropriate because she "did not know much of anything about methamphetamine." Although defendant may not have possessed the technical knowledge used by Joseph Pethers to actually make the meth, the court's finding that she had a leadership role in the manufacturing process in other ways was supported by a preponderance of the evidence.

Defendant argues that the court should not have considered testimony that she solicited her daughter to buy Sudafed to determine whether she played a leadership role, based on *People v Rhodes (On Remand)*, 305 Mich App 85; 849 NW2d 417 (2014). In *Rhodes*, this Court concluded that the defendant, who had been convicted of assault with intent to commit great bodily harm, was not a leader in the offense because "the evidence does not show that defendant acted first, gave any directions or orders to" the other offender, "displayed any greater amount of initiative beyond" his possession of a firearm, "played a precipitating role in [the other offender's] participation in the criminal transaction, or was otherwise a primary causal or coordinating agent." *Rhodes,* 305 Mich App at 87, 90. The Court also determined that the only evidence of the defendant's leadership role was that he had possessed a gun during the commission of the offense and the other offender had not. Therefore, the Court concluded that the record did not support the trial court's finding that the defendant was a leader pursuant to OV 14. *Id.* at 90. By contrast, evidence that defendant asked her daughter to buy Sudafed, in combination with other evidence, does support a finding that defendant was a leader. Based on the definition of "leader," it was not error for the trial court to find that defendant helped to lead or guide by asking her daughter to purchase Sudafed, as well as by purchasing Sudafed herself, paying for other materials, and allowing her home to be used as a meth lab. Defendant "directed" her daughter to purchase Sudafed, and arguably displayed initiative by doing so. See *Rhodes*, 305 Mich App at 90. The trial court did not err by concluding that the preponderance of the evidence, including evidence that defendant directed her daughter to purchase Sudafed, supported a finding that OV 14 should be scored at 10 points.

## IV. DOUBLE JEOPARDY

Following trial, defendant filed a motion for judgment notwithstanding the verdict (JNOV), in which she argued that she was being "punished more than once for the same act," in violation of her protection against double jeopardy, because "the factual basis for all of the Counts is . . . the same." Specifically, defendant contended that count III (owning a building intended to be used as a location to manufacture methamphetamine, MCL 333.7401c(1)(a)) and count V (delivery or possession of a controlled substance within 1000 feet of a park, MCL 333.7410a) should be dismissed because count III was a lesser included offense of count I

(conspiracy to operate or maintain a laboratory involving methamphetamine, MCL 333.7401c(2)(f); MCL 750.157a), and count II (operating or maintaining a laboratory involving methamphetamine; MCL 333.7401c(2)(f)), and count IV (possession of a controlled substance, MCL 333.7403(2)(b)(*i*)). Additionally, defendant argued that count V was a "cognate lesser offense to count III," and that both counts were "cognate lesser offenses to Counts 1, 2, and 3." According to defendant, count V violated double jeopardy with respect to her other convictions "because the same factual basis underpins . . . all of the offenses." The court denied defendant's motion without explanation.

On appeal, defendant renews her assertion that she is entitled to dismissal of two of her convictions, relying on her motion for JNOV rather than providing an argument in support of this statement. Defendant has, thus, abandoned this argument. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). We conclude, however, that the trial court did not err by denying defendant's motion for JNOV and that her constitutional rights against double jeopardy were not violated.

"Both the United States and Michigan constitutions prohibit a person from twice being placed in jeopardy for the same offense." *People v Ford*, 262 Mich App 443, 447; 687 NW2d 119 (2004), citing US Const, Am V and Const 1963, art 1, § 15. In *Ford*, this Court explained that "[b]oth federal and Michigan double jeopardy provisions afford three related protections: (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense." *Ford,* at 447. At issue in this case is the third category of double jeopardy protection.

"[T]he purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment imposed than the Legislature intended." *Id*. at 447-448. However, "[t]he Double Jeopardy Clause acts as a restraint on the prosecutor and the courts, not the Legislature." *Id.* at 448, citing *Brown v Ohio*, 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977) (citation omitted). Thus, "the Double Jeopardy Clause does not limit the Legislature's ability to define criminal offenses and establish punishments . . . ." *Id.* (citations omitted).

Whether the Legislature intended to impose multiple punishments for violations of more than one statute during the same transaction or incident is generally determined by the application of the *Blockburger*[1] or "same-elements" test. See *United States v Dixon*, 509 US 688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993); *People v Denio*, 454 Mich 691, 707; 564 NW2d 13 (1997). In general, the *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Ford,* 262 Mich App at 448 (citation and quotation marks omitted). The offenses for which defendant was convicted do not contain identical elements.

---

[1] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

-7-

MCL 333.7401c(1)(a) prohibits a person from owning, possessing, or using *a structure* that he or she knows is to be used to manufacture a controlled substance, while MCL 333.7401c(1)(b) prohibits a person from owning or possessing *any chemical or laboratory equipment* that he or she knows is to be used to manufacture a controlled substance. Although the language of the two provisions is similar, subdivision (a) required the prosecution to prove that defendant owned the house in which the methamphetamine was manufactured, while subdivision (b) required the prosecution to prove that she owned the chemicals and equipment apparently found in the house. To establish that defendant violated MCL 333.7410a, the prosecution had to show that defendant operated a meth lab within 1000 feet of a public park; only the element of possession is shared with the offenses arising under MCL 333.7401c(1)(a) and (b), which is itself one of three alternative elements listed in those subsections (i.e., "owning," "possessing," or "using"). In *Ford*, this Court held that "[e]ven where the same facts in a single trial show the commission of each [offense,] the federal Double Jeopardy Clause is not offended." *Ford,* 262 Mich App at 458. Defendant's convictions and sentences did not violate the same-elements test because the offenses arising under each statutory provision required the prosecution to prove an element that the other subdivision or statute did not.

Affirmed.


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher