# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY DAVID SMITH,

        Defendant-Appellant.

UNPUBLISHED
October 9, 2018

No. 340845
Berrien Circuit Court
LC No. 2016-00534-PC

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of safe breaking, MCL 750.531, and breaking and entering a building with the intent to commit larceny, MCL 750.110. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 10 to 35 years for the safe breaking conviction and 6 to 19 years for the breaking and entering conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2015, a Dollar General store in Coloma Township was burglarized. Angel Tunstill was the assistant manager at the time. When Tunstill arrived for work on the morning of August 23, 2015, she found that the alarm had been silenced, the cash registers were open, a surveillance camera was broken, and the safe had been drilled into and broken open. Tunstill called the police and the store's general manager, Twila Conley. Conley determined that a bank deposit bag containing just over $3,000 was missing from the safe, and approximately $1,500 in other currency was also missing from the safe and cash registers.

Officer Andrew Ulleg of the Coloma Township Police Department was one of the officers who responded to Tunstill's call. Officer Ulleg discovered that two holes had been cut into the exterior of the building on the east and west sides. He also discovered that phone cords and internet cables had been severed inside the store, disabling the alarm system. Officer Ulleg confirmed that the safe had been drilled open and that a surveillance camera had been broken.

Several surveillance cameras within the Dollar General had not been broken. The surveillance video recovered from those cameras showed one masked individual inside the store from around 1:39 a.m. to 2:59 a.m. The individual was captured on several cameras holding a

-1-

clear bottle with a black cap and red liquid. Conley testified that this bottle appeared to be a fruit-punch-flavored Powerade® bottle, also known as "red Powerade®." Conley testified that a bottle of red Powerade® was missing from the store's cooler, and that she could tell because "we pull everything forward every night and there was one missing." Conley admitted, however, that she had not closed the store the night before.

Coloma Township officers searched the outside area surrounding the Dollar General. Officer Brett Langston discovered a bank deposit bag and a red Powerade® bottle in a cornfield approximately 400 feet from the building. The Powerade® bottle was located approximately 10 feet from the deposit bag.

DNA recovered from the Powerade® bottle was tested by the Michigan State Police forensic laboratory. The DNA from the bottle matched DNA from defendant.

Before trial, both the prosecution and defendant filed motions relating to the admission of evidence. Defendant moved for a *Daubert* hearing[1] concerning the admissibility of the results of the DNA testing done in this case. The trial court[2] granted the motion and determined, following the *Daubert* hearing, that the challenged DNA evidence was admissible. The prosecution moved under MRE 404(b) for the admission of other-acts evidence related to two prior incidents: the burglary of a Dollar General Store in Ligonier, Indiana in 2009, which defendant pleaded guilty to having aided and abetted, and a break-in at the Pine View Golf Club in St. Joseph County in 2015. The trial court granted the motion to admit this evidence.

At trial, Thomas and Steven Scott, owners and operators of Pine View Golf Club, testified concerning the 2015 break-in, as did Sergeant Jeremiah Abnet of the St. Joseph County Sheriff's Department. In July 2015, the exterior back door of the clubhouse was broken into, an interior door was pried open, a keypad for the alarm system was damaged, and the phone line was cut. A filing cabinet and cash register were broken into with a pry bar and sledge hammer. Surveillance video from the clubhouse showed a masked individual removing a Powerade® bottle from a cooler behind the bar; the video was black and white, so the color of the liquid in the bottle could not be determined. A red Powerade® bottle was subsequently found on the grounds of the golf course near two pry bars and a sledge hammer, approximately 200 yards from the clubhouse. DNA was recovered from the Powerade® bottle and matched to defendant's DNA.

Sergeant Mark Heffelfinger of the Indiana State Police testified regarding the 2009 break-in at a Dollar General in Ligonier, Indiana. Sergeant Heffelfinger testified that the Indiana State

---

[1] The purpose of a *Daubert* hearing is to determine whether expert testimony is admissible under MRE 702. See *Daubert v Merrell Dow Pharm, Inc.*, 509 US 579, 593-595; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

[2] Judge Dennis M. Wiley presided over the majority of the pre-trial proceedings in this case. After Judge Wiley moved to the civil division of the Berrien Circuit Court, Judge Sterling R. Schrock was assigned to this case and presided over the trial and sentencing.

Police had been conducting surveillance of defendant's vehicle via a GPS monitoring device. On November 14, 2009, defendant's vehicle was driven to an area near the Dollar General in Ligonier. When police officers arrived at the store, they found that an opening had been cut in an exterior wall, telephone wires had been cut, a security camera had been damaged, and a safe had been broken into with a drill. Defendant and another man, Steven Bilyeu, were arrested for the burglary. Defendant ultimately pleaded guilty to aiding and abetting the burglary of the Dollar General; a copy of the Indiana judgment of conviction was entered into evidence. Bilyeu testified as a defense witness and stated that defendant had only driven him to and from the site of the burglary. Bilyeu denied any further involvement by defendant, and denied ever teaching defendant how to disable alarm systems or break into safes. Bilyeu also testified that defendant had a hernia operation in 2015.

Both the prosecution and defendant presented experts in the field of DNA analysis. The prosecution's expert, Kirk DeLeeuw of the Michigan State Police forensic laboratory biology unit, testified that the DNA taken from the red Powerade® bottle in this case contained DNA from two donors, a major donor and a minor donor. There was insufficient DNA present from the minor donor to compare to any particular DNA profile. The major donor's DNA profile was matched, using comparison software called STRmix™, to defendant's DNA. DeLeeuw testified that it was at least 17 octillion[3] times more probable that the DNA on the red Powerade® bottle was from defendant than from an unrelated contributor. DeLeeuw also testified that he had performed the DNA testing on the Powerade® bottle recovered from the Pine View Golf Club in 2015. This testing was not performed using the STRmix™ software, but used software provided by the FBI.

Defendant's expert, Dr. Karl Reich, testified that there was no way of knowing how long the DNA collected from the Powerade® bottle had been there or how it had gotten there. Dr. Reich testified that the identity of the major DNA profile was "not in dispute" and opined that there was "no doubt" that the DNA from the major donor came from defendant. Dr. Reich further testified, however, that he believed that the "enormous" probability number generated by STRmix™ was not only "useless and wasteful" but "inappropriate." Yet, Dr. Reich found "no deficiencies" in the reports generated from the Michigan State Police laboratory's analysis of the DNA from the Powerade® bottle. Dr. Reich also discussed the concept of DNA transfer.

At the close of proofs, defendant requested that the trial court instruct the jury that "mere presence" is not sufficient for a finding of aiding and abetting. The trial court denied the request, stating that the jury was not going to be instructed that defendant could be convicted as an aider and abettor and that there was therefore no need for a mere presence instruction.

Defendant was convicted and sentenced as described. This appeal followed.

---

[3] One octillion equates to one thousand trillion trillion, represented by the number 1 followed by 27 zeroes. See *Merriam-Webster's Collegiate Dictionary (11th ed)*, p 852.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by declining to give a "mere presence" jury instruction. In his Standard 4[4] brief, defendant also argues that the trial court erred by failing to give several other instructions, specifically (1) an instruction that "if circumstantial evidence can be interpreted in more than one way, then the jury must interpret same in favor of defendant," (2) an instruction that the crime of breaking and entering is complete upon entry, (3) an instruction on "an improper compromise verdict," and (4) an instruction on the standard for the admission of other-acts evidence. We disagree in all respects. We review de novo issues of law arising from jury instructions, but we review for an abuse of discretion a trial court's determination whether an instruction is applicable to the facts of a case. See *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, when a defendant fails to object or timely request an instruction, our review is limited to whether there was plain error affecting substantial rights. See MCL 768.29; *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999); *People v Martin*, 271 Mich App 280, 353; 721 NW2d 815 (2006). A defendant's affirmative approval of an instruction waives appellate review of that instruction. *People v Hall* (*On Remand*), 256 Mich App 674, 679; 671 NW2d 545 (2003).

A trial court must instruct the jury regarding the applicable law in a manner that fully and fairly presents the case to the jury in an understandable manner. *People v Moore*, 189 Mich App 315, 319; 472 NW2d 1 (1991). To that end, "[t]he instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 600 (2005).

Defendant argues that the trial court erred by denying his request for a "mere presence" instruction because such an instruction would have allowed the jury to conclude that he had merely been present at the burglary of the Dollar General in Ligonier, Indiana to which he had pleaded guilty to aiding and abetting. Defendant does not explain or support with authority his apparent contention that the trial court was required to instruct the jury that it could essentially relitigate the Indiana case in its deliberations in *this* case. Further, as discussed below, the jury received several limiting instructions regarding the use of the other-acts evidence admitted at trial, and was informed of defendant's role in the Indiana burglary. The current charges against defendant were not based on an aiding and abetting theory and the jury was not instructed that defendant could be convicted as an aider and abettor. Therefore, there was no need for a "mere presence" instruction and the trial court did not err by declining to give one. *Gillis*, 474 Mich at 113; *McGhee*, 268 Mich App at 606.

The trial court also did not err by failing to provide the additional instructions that defendant identifies in his Standard 4 brief. We note that, although defendant claims to have requested all of these instructions in a pre-trial motion, our review of that motion reveals that defendant only requested a "mere presence" instruction and an instruction concerning

---

[4] A supplemental appellate brief filed in propria persona pursuant to Michigan Supreme Court Order 2004-6, Standard 4.

circumstantial evidence, both of which were denied by the trial court at a pre-trial motion hearing. Defendant has therefore forfeited, at the very least, review of the other instructions. *Martin*, 271 Mich App at 353. But regardless of the standard of review that we employ, we find no error in the trial court's determination not to give these instructions. With regard to the requested instruction on circumstantial evidence, the trial court correctly observed that this instruction was deleted from the current version of the Model Criminal Jury Instructions, MJI 4.3 (formerly CJI2d 4.3; CJI 4:2:01-4:2:02). Further, even in cases relying on circumstantial evidence, the prosecution is not required to negate every reasonable theory consistent with defendant's innocence. See *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002). The trial court did not err by determining that the law did not support the giving of this instruction. See *Gillis*, 474 Mich at 113.

Similarly, the admissibility of evidence is, as an issue of law, a matter for the court, not the jury. See *People v Vega*, 413 Mich 773, 780; 321 NW2d 675 (1982). There was no reason for the trial court to instruct the jury on the standards for the admission of evidence under MRE 404(b), other than to invite the jury to consider whether the evidence was admitted in error. Such a determination was not within the jury's province, and the trial court did not err by failing to give such an instruction. See *Gillis*, 474 Mich at 113.

Regarding defendant's request that the jury be instructed that the crime of breaking and entering was complete upon entry, the jury was in fact instructed on the elements of breaking and entering, and was instructed that an entry is completed when any part of an offender's body enters a building, provided that the person "intended to commit larceny." *McGhee*, 268 Mich App at 606; see also *People v Davenport*, 122 Mich App 159, 165l; 332 NW2d 443 (1982) (noting that "[t]he crime of breaking and entering is complete when the entrance is gained."). This instruction fully and fairly described the elements of the charged offenses. Moreover, whether the breaking and entering was complete before the larceny actually occurred does not, as defendant suggests, render evidence of what occurred thereafter immaterial or render the evidence against him insufficient. Although defendant argues that the jury was not specifically instructed that it could not find him guilty of breaking and entering merely if it found him to be linked to stolen property (i.e., the red Powerade® bottle),[5] the jury was properly instructed on the necessary findings it needed to make to find defendant guilty of the offense charged.

Lastly, there is no indication that the jury reached a compromise verdict, and the jury was instructed that no juror was to give up his or her honest opinion "just for the sake of reaching a verdict" and that "your vote must be your own, and you must vote honestly and in good conscience." The jury was polled after the verdict and each juror voiced agreement with the finding of guilt. Defendant does not identify how a different instruction would have more adequately protected him from the risk of a compromise verdict, and we conclude that no error

---

[5] Defendant did not argue at trial that he merely possessed stolen property from the Dollar General; rather, he implied that a third party had placed the Powerade® bottle at the scene and that the Powerade® bottle could not conclusively be proven to have been taken from the Dollar General.

occurred. *Martin*, 271 Mich App at 353; *Carines*, 460 Mich at 764-765. Because we find that no error occurred, we find no merit to defendant's argument in his Standard 4 brief that the trial court's denial of requested jury instructions amounted to judicial bias. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) (noting that adverse rulings, even if erroneous, are not in and of themselves a valid basis for demonstrating judicial bias).

### III. OTHER-ACTS EVIDENCE

Defendant also argues, in both his main appellate brief and his Standard 4 brief, that the trial court erred by allowing the admission of other-acts evidence related to the break-ins in Indiana and St. Joseph County, both because the evidence was not relevant to a proper purpose under MRE 404(b), and because regardless of relevance the evidence carried the risk of unfair prejudice under MRE 403. We disagree. We review for an abuse of discretion the trial court's admission of other-acts evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

MRE 404(b) governs the admission of evidence of other acts, and provides in relevant part:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b), other-acts evidence: (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004); *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). A proper purpose is one other than establishing the defendant's propensity to commit the charged offenses. *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). Evidence of other acts is relevant to show that the charged offenses occurred if they are sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system. *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007). However, more than a general similarity is required, although the other acts and the charged offenses need not be part of a single continuing conception or plot. *Id*. (citations omitted). The evidence should possess "sufficient common features" to "support the inference that the defendant employed that plan in committing the charged offense." *People v Sabin* (*After Remand*), 463 Mich 43, 65-66; 614 NW2d 888 (2000) (citation omitted).

Here, defendant argues that the other acts lacked sufficient similarity to the charged offenses to show defendant's identity as the perpetrator of the charged offenses. Defendant notes that our Supreme Court has stated that where

-6-

the only conceivable justification for admission of such similar-acts evidence is to prove the identity of the perpetrator, the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are "[s]o nearly identical in method as to earmark [the charged offense] as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The [commonality of circumstances] must be so unusual and distinctive as to be like a signature. *McCormick*, Evidence (2d ed), § 190, p 449. [*People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982).]

Defendant further argues that the trial court erred by not applying the "higher threshold" found in *Golochowicz* to the other-acts evidence in this case, and by instead applying a lower threshold for proof of a common scheme, plan, or system. We disagree.

As the trial court noted, the other-acts evidence in this case was not offered solely for the purpose of proving defendant's identity through a signature modus operandi, as was the case in *Golochowicz*. Rather, the evidence was offered to show a common scheme or plan, and therefore did not need to be "unusual or distinctive" but only needed to "support the inference that the defendant employed that plan in committing the charged offense." *Sabin (After Remand)*, 463 Mich at 65-66, (citation omitted). The other-acts evidence admitted at trial shared "sufficient common features" to meet this requirement. *Id*. at 66. For example, the Indiana burglary of the Dollar General was nearly identical to the current offense—the breaking and entering was accomplished by cutting through the exterior wall with power tools, the phone lines and cameras were disabled, and the safe accessed by means of a drill. And the Pine View Golf Club break-in, while possessing some dissimilar elements, such as the location being a golf course rather than a retail establishment, also possessed many common features—tools such as hammers and pry bars were used, the phone line was cut, elements of the alarm system were disabled, and cash registers were broken into. Additionally and most notably, the intruder in the Pine View Golf Club break-in was also videotaped drinking from what appeared to be a Powerade® bottle, and a Powerade® bottle containing defendant's DNA was also found near other physical evidence of the crime a few hundred yards away from the burglarized location. Under these circumstances, the trial court did not abuse its discretion by admitting the other-acts evidence as being sufficiently similar to the charged offenses in the instant case.[6] *Sabin*, 463 Mich at 66.

We also reject defendant's argument that evidence of the Indiana burglary should not have been admitted because he was only an aider and abettor, not the principal offender, in that case. The fact remains that defendant pleaded guilty to the crime, and thus participated to some

---

[6] We note that allowing oneself to be videotaped drinking from a Powerade® bottle, then leaving a Powerade® bottle containing DNA evidence near other evidence of the crime and within a few hundred yards of a recently burgled building, strikes us as the sort "signature" evidence contemplated by *Golochowicz*, 413 Mich at 309.

degree, beyond his mere presence, in the conduct that formed the common scheme, plan, or system. *People v Jones*, 201 Mich App 449, 544; 506 NW2d 542 (1993). Defendant's argument goes to the weight of the evidence, not its admissibility. Defendant was free to argue that the other-acts evidence only demonstrated that he had aided Bilyeu by providing transportation to and from burglary site, not that he had committed a burglary himself, and he indeed presented testimony from Bilyeu to that effect. The trial court did not abuse its discretion by admitting the other-acts evidence in this case. *Waclawski*, 286 Mich App at 670.

Nor was the probative value of the other-acts evidence substantially outweighed by the danger of *unfair* prejudice. MRE 404(b); MRE 403. All relevant evidence is prejudicial. *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). Evidence is unfairly prejudicial when "there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citations omitted). That danger was not present here. Relevant evidence is any fact that is of consequence to the determination of the action. MRE 401, 402; see also *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (citation omitted). Here, the other-acts evidence was highly relevant to the issue of defendant's identity and the existence of a common scheme or plan in committing the charged offenses. Further, the evidence was not of the sort that would prejudice defendant by "injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Fisher*, 449 Mich at 452. Balancing the highly probative nature of the evidence with the low risk that the jury would be inflamed by it, we conclude that the trial court did not abuse its discretion by declining to exclude the evidence as unfairly prejudicial. *Waclawski*, 286 Mich App at 670. This conclusion is strengthened by the fact that the trial court instructed the jury no less than five times, over the course of a four-day trial, on the proper uses of other-acts evidence. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).[7]

## IV. ADMISSION OF DNA EVIDENCE

Defendant also argues that the trial court erred by allowing, after a *Daubert* hearing, the admission of expert testimony regarding the use of the STRmix™ DNA comparison software to compare defendant's DNA to the DNA found on the Powerade® bottle. We disagree. We review for an abuse of discretion a trial court's decision to admit expert testimony. See *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Even if admitted in error, the admission of evidence is not cause for reversal unless it affirmatively appears that it is more probable than

---

[7] Much of defendant's argument in his Standard 4 brief is based on specific facts of the Indiana case that were not admitted into evidence. We decline to consider anything that was not made a part of the record below. See *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 579-580; 609 NW2d 593 (2000) (noting that this Court's review is limited to the record developed by the trial court, and that a party is not permitted to enlarge the record on appeal by asserting facts not presented in the trial court). Further, because we find no error in the admission of this evidence, we find no merit to defendant's claims of judicial and prosecutorial misconduct related to its admission.

not that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

At the beginning of trial, defendant stated:

> First of all, I'm gonna tell you that I'm not particularly disputing that it's my DNA on the bottle. What I'm disputing is what that means and how that got there, 'cause I know I didn't put it there. And I - - I mean, I think the experts are gonna testify to you that they - - what they can't tell from DNA is when the DNA was placed on an object.

As stated, defendant presented the testimony of his own DNA expert, Dr. Reich, who stated several times that the fact that defendant's DNA matched the major DNA donor on the Powerade® bottle was "not in dispute." And during his closing argument, defendant repeatedly reiterated this point:

> I openly acknowledge that DNA experts would testify that my DNA was found on the Powerade bottle presented as evidence in this case, but I strongly disagreed about the significance of it.

*   *   *

> The single piece of ambiguous circumstantial evidence that the prosecutor claimed links me to these crimes is my DNA being found on a bottle of red Powerade . . . .

*   *   *

> Fortunately under the law I'm not required to explain how my DNA got on a bottle found at this location. I believe that someone put the bottle there with my DNA on it to cause me problems . . . .

*   *   *

> Even if you are convinced beyond a reasonable doubt that my DNA on the Powerade links me to the crime in some way . . . .

Therefore, despite defendant's claims on appeal, it is difficult to see how the admission of testimony from the prosecution's expert witness regarding a comparison of defendant's DNA with that found on the Powerade® bottle was outcome determinative. Defendant never denied that it was his DNA on the bottle, and defendant's own expert witness testified that it was defendant's DNA. Reversible error must be that of the trial court, not one to which the appellant contributed by plan or negligence. *People v Witherspoon* (*After Remand*), 257 Mich App 329, 333; 670 NW2d 434 (2003). Defendant has waived this claim of error. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998).

If, for the sake of argument, we were to find that defendant's conduct during the trial was compelled by the trial court's holding, after the *Daubert* hearing, that expert testimony regarding

STRmix™ would be admitted, we would still reject defendant's challenge. If a trial court determines that recognized scientific, technical, or other specialized knowledge will assist the jury in understanding evidence or determining a fact in issue, a witness qualified as an expert may testify to the knowledge by opinion or otherwise, if such testimony is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. MRE 702; *Dobek*, 274 Mich App at 93-94;*People v Peterson*, 450 Mich 349, 362; 537 NW2d 857 (1995); see also *Daubert v Merrell Dow Pharm, Inc.*, 509 US 579, 593-595; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779; 685 NW2d 391 (2004).

Although defendant argues that STRmix™ is not reliable because it suffers from "programming code failures," Dr. John Buckleton, one of the creators of STRmix™, testified at the hearing that programming faults had never caused a false inclusion. In fact, Dr. Buckleton knew of only two errors causing false exclusions, and both occurred during specific testing exercises rather than when used in an actual case. Further, Dr. Buckleton testified that STRmix™ was used in 17 laboratories in the United States, including the laboratories of the FBI and the United States Army. Sixty-five additional laboratories had purchased the software and were currently in the validation process for transitioning to its use. Dr. Buckleton also noted that STRmix™ had been favorably reviewed in 19 peer-reviewed scientific journals. Further, DeLeeuw testified that the STRmix™ software matched the DNA found on the Powerade® bottle to the DNA found on the Powerade® bottle in St. Joseph County, which was itself matched to defendant's DNA using older, long-established software provided by the FBI.[8] In light of this testimony, and given this Court's recent rejection of a similar challenge to the use of STRmix™ software, see *People v Muhammad*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 338300), the trial court did not err by admitting testimony concerning the use of STRmix™ software. See *Edry*, 486 Mich at 639; *Dobek*, 274 Mich App at 93-94. And, as stated above, we would not reverse in any event even if the testimony had been admitted in error, in light of defendant's contribution to that error.

In his Standard 4 brief, defendant additionally alleges "judicial misconduct" related to the admission of DNA expert testimony, claiming that the prosecution used a "new, untested in the courts, DNA processing method (STRMix)" and that "Judge Wiley did not want the county to pay for any challenge (Daubert hearing, trial testimony) to said technology by a defense DNA expert." Defendant further alleges that Judge Wiley, the prosecutor, and the former public defender(s) assigned to his case colluded in a scheme to not request a DNA expert. The record contains no support for defendant's allegations, and indeed he was ultimately provided with funds for a DNA expert, either from the trial court or the public defender's office. We find no evidence of judicial bias, see *Contempt of Henry*, 282 Mich App at 680, or prosecutorial misconduct, *Dobek*, 274 Mich App at 70, related to the admission of DNA expert testimony.

---

[8] We note that both tests used the polymerase chain reaction (PCR) testing method to obtain DNA profiles. The use of PCR testing is "firmly accept[ed]" by Michigan courts. See *People v Coy*, 258 Mich App 1, 11; 669 NW2d 831 (2003). Defendant's challenge is only to the statistical interpretation and comparison of those profiles.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant also argues in his main and Standard 4 briefs that the evidence against him at trial was insufficient to allow a rational jury to convict him of the charged offenses. We disagree. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). However, we do not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *Hardiman*, 466 Mich at 428. The prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *Id*. at 423-424. Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *Carines*, 460 Mich at 757. We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant was convicted of safe-breaking, MCL 750.531, and breaking and entering a building with the intent to commit larceny, MCL 750.110. The elements of safe-breaking are (1) the defendant broke into a safe; and (2) at the time of the breaking, the defendant intended to commit a larceny. MCL 750.531. The elements of breaking and entering a building with intent to commit larceny are that (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein. MCL 750.110; *People v Toole*, 227 Mich App 656, 658; 576 NW2d 441 (1998).

Defendant does not dispute that the elements of these offenses were satisfied by the events that occurred at the Dollar General on August 23, 2015. He argues, however, that the evidence was insufficient to allow the jury to conclude that he was the one who committed those offenses. We disagree. Again, circumstantial evidence and reasonable inferences arising from that evidence may be sufficient to prove the elements of a crime. *Carines*, 460 Mich at 757. Here, the jury was presented with evidence that a masked individual was observed by surveillance cameras inside the Dollar General long after it had closed for the night, and that the individual had taken a bottle of red Powerade®. The following morning, the Dollar General was found burglarized with its safe broken. A bank deposit bag had been stolen from that safe, and was recovered later that morning near a red Powerade® bottle. Defendant's DNA was found on the bottle. The method of breaking into the Dollar General and the safe closely matched the method used in the burglary of another Dollar General in Indiana, a crime that defendant was convicted of aiding and abetting. And the DNA from the Powerade® bottle matched the DNA found on another Powerade® bottle found near the scene of another breaking and entering in St. Joseph County earlier that year; the Powerade® bottle in that case was also left near physical evidence related to the crime. The jury could make the reasonable inference that defendant was the individual appearing in the video, and that the individual had committed the charged

offenses. Although defendant argues that he cannot be conclusively identified in the video, and notes the lack of other types of evidence, such as eyewitness testimony, fingerprints or DNA found within the Dollar General, or a confession, the evidence presented, viewed in the light most favorable to the prosecution, was sufficient. *Reese*, 491 Mich at 130; see also *Carines*, 460 Mich at 757. Defendant's arguments to the contrary chiefly rely on the desired exclusion of the other-acts evidence and DNA evidence presented at trial; as discussed, we find no error in the admission of that evidence.

## VI. JUDICIAL BIAS

Defendant also argues in his main brief that Judge Wiley demonstrated judicial bias against him, and in his Standard 4 brief that both Judge Wiley and Judge Schrock demonstrated such bias. With regard to Judge Wiley's alleged bias, defendant points to statements made during various pretrial hearings indicating that Judge Wiley was, as defendant puts it, "exasperated" with defendant's conduct. Whatever Judge Wiley's feelings towards defendant or his conduct, we find no error in the pretrial decisions with which defendant takes issue, as discussed earlier. We therefore find no error warranting reversal with respect to Judge Wiley's conduct. See *Contempt of Henry*, 282 Mich App at 680-681 (noting that a trial court's frustration with the appellant did not rise to the level of actual bias or prejudice).[9]

Regarding Judge Schrock, defendant provides several examples of alleged misconduct by Judge Schrock. These chiefly consist of adverse rulings, which, as stated, are insufficient to support a claim of bias. See *id*. at 680. The remaining issues concern Judge Schrock's failure to sanction the prosecutor for alleged prosecutorial misconduct. As discussed below, we find no such misconduct. We therefore conclude that there is no basis for sustaining a claim of judicial bias. *Id*.

## VII. PROSECUTORIAL MISCONDUCT

In his Standard 4 brief, defendant makes numerous allegations of prosecutorial misconduct, including many acts that defendant deems "gross malfeasance," "malicious prosecution," and "abuse of power." These alleged acts fall into a few general categories: (1) alleged discovery violations, (2) alleged false statements and omissions related to the introduction of the other-acts evidence, and (3) alleged improper arguments from the evidence and references to facts not in evidence. We disagree that any misconduct occurred.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. However, our review of unpreserved claims of prosecutorial misconduct

---

[9] Judge Wiley did not preside over defendant's trial and therefore had no occasion to influence the jury.

is limited to plain error affecting defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

Regarding the alleged discovery violations, "[d]efendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment." *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). However, criminal defendants do not have a general constitutional right to discovery. *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Accordingly, the erroneous admission of evidence in violation of the mandatory disclosure rule is nonconstitutional error where that evidence is not "favorable to the accused." *Id*. at 765-766 n 6. The majority of defendant's claimed discovery violations involve the prosecution's alleged tardy provision of documentary evidence that was ultimately provided to defendant and was not exculpatory. Further, defendant did not move to compel discovery regarding any of these documents, which defendant admits were ultimately provided to him, in most cases with ample time before trial. And although defendant contends that he was "surprised" by the prosecution's revelation that a videotaped recording of his police interview existed, he neglects to mention that the trial court found that a discovery violation had occurred regarding that recording, and ruled that the video was inadmissible at trial. In sum, defendant has failed to show that he was prejudiced by any delays in the provision of evidence, or that he was denied any exculpatory evidence, and therefore that any prosecutorial misconduct regarding discovery occurred. *Dobek*, 274 Mich App at 63; *Brown*, 279 Mich App at 134.

Regarding the prosecution's alleged false statements and omissions concerning the other-acts evidence, defendant in essence takes issue with the prosecution's argument that the other two break-ins were similar to the charged offenses, and with the prosecution's failure to point out differences between the prior break-ins and the currently-charged conduct. But the prosecution was free to "argue the evidence and all reasonable inferences from the evidence as it relates to [its] theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). It was not required to argue defendant's case for him. And to the extent that defendant argues that the prosecution sought to imply that he was the principal, not an aider and abettor, in the Indiana burglary, such a claim is not supported by the record. The prosecution was permitted to argue from the evidence, and was not required to confine its argument to "the blandest possible terms." *Dobek*, 274 Mich at 66. We discern nothing in the prosecution's argument concerning the other-acts evidence that rises to the level of prosecutorial misconduct. Further, even if the prosecution's statements did leave the jury with the impression that defendant, not Bilyeu, was the principal in the Indiana burglary, Bilyeu testified clearly and unequivocally that he committed the offense for which he was convicted, burglary of the Dollar General, and that defendant's involvement was that of an aider and abettor. We conclude that no error warranting reversal occurred. *Dobek*, 274 Mich App at 63.

Finally, regarding the prosecution's alleged false statements, such as claiming that "ambiguous circumstantial evidence of a Powerade at Coloma and Pine View Golf conclusively established [defendant] committed both of said crimes" and invoking the "doctrine of chances," we conclude that these statements represented good-faith arguments from the evidence and reasonable inferences from the evidence. *Unger*, 278 Mich App at 236. And although the prosecution may have occasionally referred to defendant's Indiana conviction as being for "burglary" rather than the crime of "aiding in burglary," a copy of his Indiana judgment of

conviction was entered into evidence and, again, Bilyeu testified that defendant had simply aided him in the burglary by driving him to and from the scene.

In sum, we find no merit to defendant's argument that the prosecution committed misconduct and denied him a fair trial. *Dobek*, 274 Mich App at 63.

## VIII. DENIAL OF EFFECTIVE COUNSEL AND ACCESS TO LEGAL RESOURCES

Lastly, defendant in his Standard 4 brief argues that "the criminal justice system in Berrien County is broken" and states that his court-appointed counsel was so inadequate that he was forced to represent himself. Additionally, he argues that he was denied access to adequate legal resources while in jail. We disagree.

The effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. In doing so, defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).

A defendant has a constitutional and statutory right to represent himself. See Const 1963, art. 1, § 13; MCL 763.1. An indigent defendant is guaranteed the right to counsel; however, "he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). Here, defendant was assigned, and ultimately rejected, three different court-appointed attorneys before deciding to represent himself; Attorney Richard Sammis, his third appointed attorney, remained available as standby counsel.

Defendant argues that his attorneys were ineffective in numerous ways, but focuses this Court's attention particularly on three: he alleges that his attorneys were ineffective (1) for not engaging a DNA expert or requesting a *Daubert* hearing, (2) for failing to request discovery concerning the other-acts evidence admitted at trial, and (3) for failing to call Katrina Rolland, the employee who closed the Dollar General the previous night, as a witness or to introduce medical records concerning medical procedures he underwent in 2015.

With regard to a DNA expert, defendant himself admits in his brief that his second attorney, at least, did request funds from the Court to engage a DNA expert, and that Sammis did request a *Daubert* hearing and funds to pay for an expert. At the *Daubert* hearing, Sammis informed the trial court that he would be having Dr. Reich testify during the trial. Dr. Reich did ultimately testify at trial. Therefore, even if we assume for the sake of argument that any of defendant's counsel was ineffective, defendant has not carried his burden of showing prejudice. *Armstrong*, 490 Mich at 289-290. To the extent that defendant argues that engaging Dr. Reich to testify at the *Daubert* hearing itself would have prompted a different result, we note that Dr.

Reich's stated issues with STRmix™, such as programming faults and the availability of the source code and algorithms used by the program, were fully explored at the hearing. Defendant cannot demonstrate prejudice. *Id*.

As for defendant's remaining claims, the problem that defendant has is that he ultimately chose to (and did) represent himself at trial. Defendant has not demonstrated, for example, that the conduct of his attorneys prevented him from calling Rolland as a witness, or from raising issues related to medical conditions in 2015, or from raising issues of alleged prosecutorial misconduct or judicial bias. And as far as the other-acts evidence is concerned, the record shows that Sammis did argue against the admission of other-acts evidence, argued to limit the scope of the evidence introduced, and requested a limiting instruction. Defendant has failed to demonstrate either deficient performance or prejudice by the pretrial conduct of his attorneys, especially when he ultimately represented himself. *Id*.

With regard to defendant's limited resources while in jail, the record reflects numerous efforts by the trial court and the prosecution to work within those limitations and to provide defendant with what he needed. Further, it could not have been a surprise to defendant that his ability to correspond with the outside world would be hampered by his incarceration.[10] Ultimately, defendant went into self-representation with his eyes open and cannot now use his decision as a basis for reversing his convictions. As our Supreme Court has stated:

> To permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected. [*People v Williams*, 470 Mich 634, 645; 683 NW2d 597 (2004) (quotation marks and citations omitted).]

Affirmed.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel

---

[10] If defendant believes that the Michigan Department of Corrections, which is not a party to this case, violated his constitutional rights during his incarceration, his remedy lies elsewhere.