# Order

Michigan Supreme Court
Lansing, Michigan

July 9, 2021

160968

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellee,

v

KELLIE NICHOLE STOCK,
       Defendant-Appellant.

SC: 160968
COA: 340541
Wayne CC: 17-003509-FC

_____/

On May 5, 2021, the Court heard oral argument on the application for leave to appeal the December 26, 2019 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.305(H)(1). In lieu of granting leave to appeal, we REVERSE that part of the judgment of the Court of Appeals holding that the defendant's convictions for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function were supported by sufficient evidence on the record. The prosecution failed to present evidence that the presence of cocaine metabolites in the defendant's urine supports a reasonable inference that the defendant had cocaine in her body. MCL 257.625(8) states, in relevant part:

> A person, whether licensed or not, shall not operate a vehicle on a highway or other place open to the general public or generally accessible to motor vehicles . . . if the person has in [their] body any amount of a controlled substance listed in schedule 1 under section 7212 of the public health code, 1978 PA 368, MCL 333.7212, or a rule promulgated under that section, or of a controlled substance described in section 7214(a)(*iv*) of the public health code, 1978 PA 368, MCL 333.7214.

As noted by dissenting Judge SHAPIRO, the prosecution bears the burden of proof with regard to each element of an offense, including whether a controlled substance was in a defendant's body. In *People v Feezel*, 486 Mich 184 (2010), this Court held that 11-carboxy-THC, a metabolite of the main psychoactive chemical in marijuana, is not a Schedule 1 controlled substance for purposes of MCL 257.625(8). Therefore a person cannot be prosecuted under the statute for operating a motor vehicle with "any amount" of the metabolite in their system. In this case, the prosecution presented evidence—the results of a toxicology screen—indicating the presence of an unidentified metabolite of cocaine in the defendant's urine. While the prosecution contends that *Feezel* can be distinguished, the prosecution argues for an interpretation of "controlled substance" that would include any metabolite of cocaine—the same argument this Court rejected in

*Feezel* when we explained that 11-carboxy-THC is not a Schedule 1 controlled substance. *Id.* at 210-211 (opinion by M. F. CAVANAGH, J.); *id.* at 217 (opinion by WEAVER, J.). Here, the prosecution failed to identify the metabolite or demonstrate that the metabolite *itself* was a "controlled substance" for purposes of MCL 257.625(8). Further, the prosecution's evidence showing the mere presence of an unidentified metabolite, but nothing more, was not sufficient to prove that the defendant had *any amount* of cocaine in her body at the time of the motor vehicle collision. We therefore REVERSE the defendant's sentences for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function, and we REMAND this case to the Wayne Circuit Court for further proceedings not inconsistent with this order. On remand, the circuit court shall determine whether resentencing on the defendant's remaining convictions is required where the Court of Appeals has reversed the defendant's convictions of operating a motor vehicle while license suspended causing death and operating a motor vehicle while license suspended causing serious impairment of a body function and where this Court has reversed the defendant's sentences for operating a motor vehicle while intoxicated causing death and operating a motor vehicle while intoxicated causing a serious impairment of a body function. In all other respects, the application for leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

We do not retain jurisdiction.

ZAHRA, J. (*dissenting*).

I respectfully dissent from this Court's order reversing the decision of the Court of Appeals that there was sufficient evidence to convict defendant of operating a motor vehicle while intoxicated (OWI) causing death[1] and OWI causing a serious impairment of a body function[2] based on defendant's positive test for cocaine metabolites after her motor vehicle accident, as well as her behavior leading up to the accident.

"Challenges to the sufficiency of the evidence are reviewed de novo."[3] "In evaluating defendant's claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt."[4] All conflicts in the evidence are resolved in favor of the prosecution,[5] and

---

[1] MCL 257.625(4) and (8).

[2] MCL 257.625(5) and (8).

[3] *People v Wang*, 505 Mich 239, 251 (2020).

[4] *Id.* (quotation marks and citation omitted).

[5] *People v Wolfe*, 440 Mich 508, 515 (1992).

circumstantial evidence and reasonable inferences drawn therefrom can constitute satisfactory proof of the crime.[6] "Circumstantial evidence is evidence of a fact, or a chain of facts or circumstances, that, by indirection or inference, carries conviction to the mind and logically or reasonably establishes the fact to be proved."[7]

MCL 257.625(8)[8] prohibits the operation of a vehicle on a highway if a "person has in his or her body *any amount* of a controlled substance listed in schedule 1 under [MCL 333.7212] . . . or of a controlled substance described in [MCL 333.7214(a)(*iv*)]."[9] MCL 333.7214(a)(*iv*) includes, as a Schedule 2 controlled substance:

> Coca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, except that the substances do not include decocainized coca leaves or extraction of coca leaves which extractions do not contain cocaine or ecgonine. The substances include cocaine, its salts, stereoisomers, and salts of stereoisomers when the existence of the salts, stereoisomers, and salts of stereoisomers is possible within the specific chemical designation.

Whether the presence of a cocaine metabolite in one's body is sufficient to sustain a conviction under MCL 257.625(8) first turns on whether a cocaine metabolite is a Schedule 2 drug under MCL 333.7214(a)(*iv*). Although this Court has not yet delved into the science of cocaine metabolites, it has done so with respect to the specific marijuana metabolite 11-carboxy-tetrahydrocannabinol (11-carboxy-THC), which is produced by the body naturally when it metabolizes THC—the psychoactive ingredient of marijuana. In *People v Feezel*, this Court held that 11-carboxy-THC is not a Schedule 1 controlled substance under MCL 333.7212 of the Public Health Code, MCL 333.1101 *et seq.*, and thus "a person cannot be prosecuted under MCL 257.625(8) for operating a motor vehicle with any amount of 11-carboxy-THC in his or her system."[10] In rendering its decision, the *Feezel* Court overruled its prior decision in *People v Derror*, which came to the opposite conclusion just four years earlier.[11]

---

[6] *People v Nowack*, 462 Mich 392, 400 (2000).

[7] *Wang*, 505 Mich at 251 (quotation marks, citations, and alterations omitted).

[8] OWI causing death and OWI causing serious impairment of a body function, which have the same elements except for the injury sustained, permit a conviction if defendant was operating her motor vehicle while she was intoxicated in violation of MCL 257.625(1), (3), or (8). See MCL 257.625(4) and (5); *People v Schaefer*, 473 Mich 418, 434 (2005) (setting forth the elements of OWI causing death). The parties and the Court of Appeals focused their analyses on MCL 257.625(8).

[9] Emphasis added.

[10] *People v Feezel*, 486 Mich 184, 205 (2010).

[11] *People v Derror*, 475 Mich 316 (2006), overruled by *Feezel*, 486 Mich 184. *Derror*

Although I would not extend *Feezel*'s narrow holding here,[12] even applying *Feezel* to cocaine metabolites in general does not automatically resolve this case. This Court's

focused on the term "derivative" in MCL 333.7212 to conclude that 11-carboxy-THC, which "has an identical chemical structure to THC except for the eleventh carbon atom," was a Schedule 1 controlled substance. *Id.* at 327. *Feezel*, on the other hand, relied on expert testimony that 11-carboxy-THC had no known pharmacological effect and lacked other characteristics of controlled substances to conclude that neither federal law nor the Public Health Code classified 11-carboxy-THC as a Schedule 1 controlled substance under MCL 333.7212. *Feezel*, 486 Mich at 207-212.

[12] Not only do we lack the sort of expert testimony presented in *Feezel* and *Derror*, we are also not reviewing a specific metabolite of cocaine. Absent record evidence or expert testimony establishing the specific metabolite at issue, I would not conclusively extend *Feezel*'s narrow holding regarding 11-carboxy-THC, a specific marijuana metabolite, to virtually all drug metabolites in general. See *People v Barkley*, 488 Mich 901, 902 (2010) (CORRIGAN, J., dissenting) (noting that "it is unclear from the record provided to this Court *which* metabolite or metabolites of THC were measured," that "[a]ll metabolites of THC indicate ingestion of marijuana, and [that] defendant did not contest at trial which metabolite or metabolites appeared in her system").

Further, it is important to note that, in between the time *Derror* and *Feezel* were decided, the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, was enacted into law "to allow a limited class of individuals the medical use of marijuana . . . ." *People v Kolanek*, 491 Mich 382, 393 (2012). In deciding to overrule *Derror*, the *Feezel* Court recognized the MMMA's seismic shift in the law and its profound impact on motorists who operate their vehicles long after the impairing effects of medical marijuana have worn off. See *Feezel*, 486 Mich at 215 n 16 (stating that *Derror* defies practical workability in part because, "under the *Derror* holding, those qualified individuals who lawfully use marijuana in accordance with the [MMMA] are prohibited from driving for an undetermined length of time given the potential of 11-carboxy-THC to remain in a person's system long after the person has consumed marijuana and is no longer impaired"). While Michigan has since legalized marijuana for medicinal and recreational purposes, cocaine remains illegal. There also appears to be a much "closer biological link between impairment and the presence of cocaine metabolites" than with marijuana metabolites like 11-carboxy-THC. *Commonwealth v DiPanfilo*, 993 A2d 1262, 1267 (Pa Super, 2010). While actual intoxication is not necessary to prove OWI under MCL 257.625(8), I would not ignore the tenuous link between impairment and 11-carboxy-THC that played a crucial role in the *Feezel* Court's decision to overrule *Derror*.

Accordingly, absent similar record evidence and expert testimony that this Court possessed in *Feezel* and *Derror* regarding the specific marijuana metabolite at issue, I would not conclusively extend *Feezel* beyond its own parameters to a whole new class of illicit substances as the Court does here.

conclusion that "the prosecution's evidence showing the mere presence of an unidentified metabolite . . . was not sufficient to prove that the defendant had *any amount* of cocaine in her body at the time of the motor vehicle collision" ignores the rather elementary rule that "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime."[13]   As the Court of Appeals explained below, the presence of cocaine metabolites in defendant's urine is "probative of the presence of cocaine" and may still be used as circumstantial and inferential evidence that defendant had cocaine in her body at the time of the accident.[14]   Indeed, even the dissenters in *Derror*, who later formed the majority in *Feezel*, recognized that the presence of "11-carboxy-THC may be used as *circumstantial* evidence of a statutory violation[.]"[15]   The presence of cocaine metabolites in a person's body is even stronger circumstantial evidence of a statutory violation given the closer biological link between its presence and impairment.   Because a cocaine metabolite only ever appears in a person's body if the person has ingested cocaine, the presence of cocaine metabolites necessarily establishes that defendant ingested cocaine at some prior point in time.   And given that defendant was taken to the hospital immediately after her accident, it is unlikely that she ingested cocaine in the roughly four and a half hours between the accident and her urine test.   It was therefore reasonable for the jury to infer that defendant had ingested cocaine prior to her motor vehicle accident.

Further, defendant's behavior leading up to the accident is compelling circumstantial evidence that she operated her vehicle with cocaine in her body.   An undercover police officer had observed defendant drive the wrong way down a one-way street and attempted to have nearby officers stop defendant's vehicle on that basis. Despite the police activating their vehicle's emergency lights and sirens, defendant refused to pull her vehicle over.   Instead, defendant initiated a high-speed police chase, in which she sped down Woodward Avenue in rush-hour traffic, ran a red light, and crashed into another vehicle.   The accident resulted in the death of the driver of the other vehicle and left the passenger of defendant's vehicle, Classie Butler, seriously injured.   At trial, Butler testified that when defendant observed what she believed to be an undercover police car behind her, she started speeding.   Butler insisted that she be let out of the vehicle because she was scared by how fast defendant was driving.   Defendant ignored Butler's complaints and sped even faster, stating that she had violated her parole and that she did not want to get into trouble.   Defendant's reckless driving and her refusal to surrender despite commands from law enforcement and pleas from the passenger of her vehicle, coupled with her positive test for cocaine metabolites, provided sufficient

---

[13] *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

[14] *People v Stock*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 340541), p 5; see also *id*. at 6, 14.

[15] *Derror*, 475 Mich at 361 (CAVANAGH, J., dissenting).

circumstantial and inferential evidence for a rational jury to conclude that defendant had operated her vehicle with any amount of cocaine in her body and thus supported her OWI convictions.[16] Accordingly, this Court's conclusion that the prosecution failed to meet its burden of proof with respect to that element of the offense is simply incorrect.

Defendant cites caselaw discussing positive urine tests for both cocaine and cocaine metabolites,[17] as well as scientific literature suggesting that cocaine metabolites can pool in one's bladder and remain there for multiple days. The inferences defendant asks this Court to draw, then, are that because defendant's urine test revealed only the presence of cocaine metabolites, she (1) must have ingested cocaine well before the accident, and (2) must not have had cocaine in her body at the time of the accident. I disagree. The prosecution, "[e]ven in a case relying on circumstantial evidence, . . . need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide."[18] Viewing the evidence in a light most favorable to the prosecution and resolving all conflicts in the evidence in its favor—as we must do—the Court of Appeals did not err by concluding that there was sufficient evidence to support defendant's OWI convictions under MCL 257.625(8), and therefore under MCL 257.625(4) and (5).

Because I discern no error in the Court of Appeals' decision affirming defendant's OWI convictions, I respectfully dissent.

VIVIANO, J., joins the statement of ZAHRA, J.

---

[16] Although these facts may also support the conclusion that defendant was intoxicated at the time she operated her vehicle, actual intoxication is not necessary to prove OWI under MCL 257.625(8).

[17] See *People v Moore*, 189 Mich App 315, 317 (1991).

[18] *People v Hardiman*, 466 Mich 417, 423-424 (2002) (quotation marks and citation omitted).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 9, 2021



t0706

Clerk